UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STAFFORD FREEMAN, III, and  :
NICOLE FREEMAN,             :
    Plaintiffs             :   CIVIL ACTION NO. 12-2558
                            :
v.                          :
                            :
RUBY TUESDAY, INC. and RUBY :
TUESDAY,                    :
    Defendants             :
_____:

## MEMORANDUM OPINION AND ORDER

**Rufe, J.**                                                                                                   August 12, 2013

Plaintiffs filed this negligence action after Plaintiff Stafford Freeman was burned by hot beef queso dip he ordered at a Ruby Tuesday restaurant on July 21, 2012. The parties have completed fact and expert discovery. Presently before the Court is Defendants' Motion to Exclude the Testimony of Plaintiff's Expert Witness Barry Parsons and Defendants' Motion for Summary Judgment. For the reasons set forth below, the Court will grant the Motion to Exclude Testimony, and deny the Motion for Summary Judgment.

I.     **Stipulation of Material Facts**[1]

Mr. Freeman ordered and was served beef queso dip, a hot appetizer which he knew was served hot, while dining at a Ruby Tuesday in Lansdale, Pennsylvania. The dip is served with tortilla chips. Mr. Freedman scooped some dip onto a tortilla chip to eat it. The dip burned his mouth, causing him to drop dip on his forearm, causing second degree burns to his arm. He

---

[1] As required by the Court's policies and procedures, Defendant's Motion for Summary Judgment was accompanied by a statement of stipulated material facts. The parties stipulate to these facts for the purpose of the motion for summary judgment only.

jerked backward when the hot dip fell on his arm, causing injuries to his shoulder, neck and back.

Ruby Tuesday's policy is to separately microwave the beef and queso (cheese dip) components of the beef queso dip after it is ordered by a customer, and to combine and serve the dip soon after the components are heated to a minimum of 165 degrees.[2] Plaintiffs have produced an expert report from Barry E. Parsons, offered as a food safety specialist, who visited a different Ruby Tuesday location on October 6, 2012, and measured the temperature of a queso dip appetizer at 166 degrees. Defendant produced an expert report from Ruby Tuesday's Vice President of Culinary & Beverage, Emerging Brands, Pat Peterson.

## II. Motion to Exclude Testimony[3]

### A. *Standard of Review*

Federal Rule of Evidence 702 reads:

> [I]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient fact or data, (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts.

The Third Circuit has distilled this rule to two essential inquiries: 1) is the proffered expert qualified to express an expert opinion; and 2) is the expert opinion reliable?[4]

Under the Third Circuit framework, the focus of the Court's inquiry must be on the

---

[2] All temperatures are given in degrees Fahrenheit.

[3] Plaintiffs' response to the Motion to Exclude Testimony was filed more than one week late. Nevertheless, Court has considered the response.

[4] In re TMI Litig., 193 F.3d 613, 664 (3d Cir. 1999).

2

expert's methods, not his conclusions. The fact that Plaintiffs' experts and Defendants' experts reach different conclusions does not factor into the Court's assessment of the reliability of their methods.[5] To meet the Daubert standard, an expert must demonstrate that he has good grounds for the opinion (i.e., the opinion is based on methods and procedures of science, not subjective belief) and a reasonable degree of scientific certainty regarding the opinion.[6] An expert need not necessarily use the best grounds or unflawed methods.[7]

Expert evidence must be relevant and reliable to be admissible. The Court must consider: 1) whether the expert's theory can be tested; 2) whether studies have been subject to peer review and publication; 3) the potential for error in a technique used; and 4) the degree to which a technique or theory (but not necessarily a conclusion) is generally accepted in the scientific community.[8]

B. *Discussion*

Plaintiff has produced an expert report from Barry E. Parsons, and wishes to offer his expert testimony at trial. Mr. Parsons is a "food safety specialist" with an associates degree in Science-Business Management from Pierce Junior College. Mr. Parsons has provided a report which provides data about the length of time it takes a person to sustain second degree burns from water at various temperatures, and draws the conclusion that by serving the dip at 165 or

---

[5] However, where the scientific community considers the evidence to be inconclusive, a difference of opinion may sometimes undermine the reliability of an expert's conclusion that there is a causal link, and may justify excluding that expert. Magistrini v. One Hour Martinizing Dry Cleaning, 180 F. Supp. 2d 584, 607 (D.N.J. 2002), aff'd, 68 F. App'x 356 (3d Cir. 2003).

[6] See Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579, 590 (1993).

[7] In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 745 (3d Cir. 1994); Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 784 (3d Cir. 1996).

[8] Daubert, 509 U.S. at 593-94.

3

166 degrees, rather than at 135 degrees, Ruby Tuesday created a dangerous condition. He opines that the dip was excessively hot, that Mr. Freeman was unexpectedly and unreasonably exposed to the excessively hot dip by Ruby Tuesday, that Ruby Tuesday's failure to allow the dip to cool to a safe temperature before serving was unreasonable and created an extremely dangerous condition which caused Mr. Freeman's injuries, and that Ruby Tuesday was unreasonable in failing to warn Mr. Freeman that the appetizer was excessively hot, creating a dangerous condition and causing Mr. Freeman's injuries.

Defendant seeks to exclude Mr. Parsons's testimony, arguing that his methodology is not reliable; his opinions and conclusions are not reliable, relevant, or admissible; he seeks to offer inadmissible legal opinions; and his testimony may confuse the issues and mislead the jury.

The Court finds that Mr. Parsons's expert opinion is unreliable because his opinion does not have a discernible methodological basis,[9] and there is a poor fit between the expert's opinion and the facts and data upon which it is based,[10] for the reasons which follow.

Beef queso dip is a mixture of ground beef and melted cheese. Mr. Parsons's report says nothing about the temperature at which the cheese used will melt, nor about the temperature at which melted cheese (or beef queso dip) will burn the mouth and cause second degree burns to skin. Mr. Parsons's report only discusses the temperature and length of exposure to hot water that will cause burns to the skin. He concludes, without reference to any supporting evidence, that hot cheese and hot water at similar temperatures will affect the skin similarly (except melted cheese has a greater tendency to adhere to skin–a fact for which no expertise is necessary). As

---

[9] See Schneider ex rel. Estate of Schneider v. Fried, 320 F. 3d 396, 404 (3d Cir. 2003) (citation omitted).

[10] See United States v. Schiff, 602 F.3d 152, 173 (3d Cir. 2010).

4

Defendants note, different substances have different melting points, different boiling points, and different thermal properties. Mr. Parsons provides no data regarding the temperature and length of exposure to melted cheese which will cause burns to the skin. There is no indication that Mr. Parsons has the expertise to discuss the relationship between the thermal properties of water and beef queso dip, and his report does not include such a discussion. Mr. Parsons suggests that the restaurant should have served the dip at the minimum safe temperature allowed by the state (135 degrees),[11] and opines that 165 degrees is "excessively hot." Defendant correctly notes that the food regulation Mr. Parsons relies upon sets 135 degrees as the *minimum* holding temperature required to prevent microbe growth in foods served hot, and, in fact, holding temperatures over 140 degrees are preferred to prevent bacterial growth.[12] Food must be *cooked* to a higher temperature than the holding temperature to reduce bacteria below levels that can cause illness.[13] Mr. Parsons does not cite to any industry standard or regulation setting a maximum serving temperature for hot food, or to any guidance on common industry practices with regard to burn prevention, and fails to provide any basis for inferring that food served hotter than the minimum holding temperature presents an unreasonably dangerous condition.[14] The Court finds that Mr. Parsons relies upon an irrelevant regulation as the basis for his opinion that 135 degrees is a "safe" temperature for beef queso dip, as that regulation does not speak to burn prevention, and

---

[11] 7 Pa. Code § 46.385 ("Pa. Food Code").

[12] See Doc. No. 15, Ex. N.

[13] See generally Pa. Food Code §§ 46.361-46.385. Animal-derived foods being heated or reheated in the microwave must reach a temperature of 165 degrees to prevent illness. 7 Pa. Food Code §§ 46.362 and 46.365.

[14] Defendant notes that there are no food regulations specifying a maximum temperature at which food should be served, and courts have routinely rejected claims of liability where restaurants served food or beverages at high temperatures. Plaintiffs do not, in their response, point to any regulations specifying a maximum temperature at which food may be served or over which warnings are required.

5

allowing him to present this opinion at trial has the potential to mislead the jury.[15]

Finally, Mr. Parsons's report takes two undisputed facts – the dip was served at approximately 165 or 166 degrees, and the dip burned Mr. Freeman's skin – and then provides what is essentially a lay-person's opinion that Ruby Tuesday had a legal duty to train its employees to allow the dip to cool to a lower temperature before serving or to warn customers that the appetizer was excessively hot. Opinions about common or best practices for restaurants may be within Mr. Parsons's established area of expertise, but the legal duties of restaurants are not.[16]

Accordingly, the Court, in its role as gatekeeper, cannot permit the jury to hear Mr. Parsons's opinion regarding whether Ruby Tuesday's practice of serving beef queso dip at 165 degrees is unreasonably dangerous or is in violation of its duty of care and/or duty to warn.[17]

---

[15] See Bennett v. Real Prop. Servs. Corp., 66 F. Supp. 2d 607, 613 (D.N.J. 1999) (expert opinion without support to the extent that it is grounded in irrelevant code sections).

[16] Flickinger v. Toys R Us- Del., Inc., 492 F. App'x 217, 224 (3d Cir. 2012); Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Plan & Trust Agreement, 812 F. Supp. 1376, 1378 (E.D. Pa. 1992).

[17] Plaintiffs' response to the Motion to Exclude states: "the temperature of the food served to Mr. Freeman, which caused his burns, is the quintessential issue of fact to be decided by the jury." However, it appears that Ruby Tuesday acknowledges that its practice is to serve the beef queso dip at approximately 165 degrees. Ruby Tuesday also indicates that until 2001, it typically served hot appetizers at 155 degrees, but it raised the serving temperature to 165 degrees based on customer complaints about food being served too cold. Therefore, it appears that the parties may be able to present the jury with a stipulation to the fact that Ruby Tuesday typically serves the beef queso dip at 165 degrees.
To the extent that Plaintiff wishes to put forth additional evidence that the dip was served at 165 or 166 degrees, the Court notes that Mr. Parsons used a reliable method to establish the temperature of the dip served to him at a Ruby Tuesday restaurant. Accordingly, Mr. Parsons may be allowed to testify only to the evidence he gathered with regard to the serving temperature of the dip. He may not opine as to whether that serving temperature was excessive or unreasonable.

## III. Motion for Summary Judgment

### A. *Standard of Review*

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[18] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[19] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[20] A party asserting a fact is genuinely disputed must support the assertion by citing to materials in the record or showing that the materials cited do not contain admissible evidence to support the fact.[21] In considering a summary judgment motion, the Court does not weigh the evidence or make credibility determinations; "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[22]

### B. *Discussion*

To succeed on a negligence claim, Plaintiffs must show that Defendants owed a duty of care, breached that duty, the breach resulted in injury, and Plaintiffs suffered actual damage.[23] Specifically, to establish liability to a business invitee under Pennsylvania law, a plaintiff must

---

[18] Fed. R. Civ. P. 56(a).

[19] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[20] Id.

[21] Fed. R. Civ. P. 56(c).

[22] Anderson, 477 U.S. at 255.

[23] Estate of Zimmerman v. S.E. Pa. Transp. Auth., 168 F.3d 680, 684 (3d Cir. 1999).

7

show that the business: 1) knew or could have discovered the condition; 2) should realize such a condition involves unreasonable risk of harm to invitees; 3) should expect that an invitee will not expect or readily discover the condition; and 4) fails to exercise reasonable care to protect the invitee against injury.[24] If a danger is obvious to an invitee (i.e., a reasonable person in the invitees's position, exercising normal perception, intelligence, and judgment would recognize the danger), the business cannot be held liable.[25] Here, Defendant knew that the beef queso dip was typically served at 165 degrees, satisfying the first element. However, the parties dispute the other elements.

Defendants argue that Plaintiffs cannot, as a matter of law, establish negligence, because the danger was obvious: an invitee must expect that a hot appetizer will be served hot. Specifically, Defendants argue, Pennsylvania law does not impose a duty on restaurants to serve food and beverages at a temperature at which they cannot burn a customer, nor does it require that the restaurant warn a customer when hot foods and beverages are hot. Defendant cites state court cases holding that a reasonable person would know that hot coffee or tea is hot enough to cause a burn if spilled on skin, and holding that when the high temperature of a beverage is not unexpected, no warning is required and the seller cannot be liable in negligence based on the temperature of that beverage.[26]

The Court acknowledges the cited case law regarding liability for serving hot beverages;

---

[24] Carrender v. Fitterer, 469 A.2d 120, 123 (Pa. 1983).

[25] Id.; Palenscar v. Michael J. Bobb, Inc., 266 A.2d 478, 480 (Pa. 1970).

[26] See, e.g., Hurvitz v. Starbucks Corp., No. 06-0613, 2007 WL 5323787, at *1 (Pa. Com. Pl., Nov. 20, 2007) (granting summary judgment in favor of Starbucks in a suit in which a customer was burned after she removed the cup's lid and spilled hot tea on herself, finding that Plaintiff failed to establish that Starbucks deviated from the duty of reasonable care it owed in the circumstances).

8

however, because the beef queso dip is not a hot beverage, whether the danger of spilled beef queso dip would have been similarly open and obvious to a reasonable person is a question of fact for the jury. If the jury finds it is, Defendant cannot be liable for Mr. Freeman's injuries.[27] If the jury finds that the beef queso dip posed an *unexpected* and not readily-discovered danger to Plaintiff, it will need to determine whether serving beef queso dip at an unexpectedly hot temperature, without a warning, was unreasonable. Accordingly, the Court will deny the motion for summary judgment.

## IV. Conclusion

For the reasons set forth herein, Defendants' Motion to Exclude Expert Testimony will be granted, and the Motion for Summary Judgment will be denied. An appropriate order follows.

---

[27] See Palenscar, 266 A.2d at 482-83.